IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID KHAL,                                    Case No. 3:11-CV-01482-AA
                                                    OPINION AND ORDER
          Plaintiff,

     vs.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.
_____

Tim Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, Nevada 89137
     Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97201

PAGE 1 - OPINION AND ORDER

Jeffrey R. McClain
Special Assistant U.S. Attorney
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff David Khal brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) under the Act. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further administrative proceedings.

## PROCEDURAL BACKGROUND

On March 9, 2004, plaintiff filed an application for DIB. Tr. 58-60. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge (ALJ). On October 11, 2006, after a hearing held before him, ALJ Thomas Tielens issued a decision finding plaintiff not disabled. Tr. 1073-80. On May 15, 2009, the Appeals Council issued an Order remanding the matter to a new ALJ for a new hearing. Tr. 1115-18. On March 24, 2010, after a hearing held before him, ALJ Richard Say issued a decision finding plaintiff not disabled. Tr. 13-27. After the Appeals Council declined to review the ALJ's decision on October 14, 2011, plaintiff filed a complaint in this Court. Tr. 6-8.

PAGE 2 - OPINION AND ORDER

## STATEMENT OF THE FACTS

Born on February 18, 1949, plaintiff was 55 years old on the alleged onset of disability and 61 years old at the time of the second administrative hearing. Tr. 1205. Plaintiff graduated from high-school, college, and chiropractic school. Tr. 1151, 1205. He has past relevant work experience as a chiropractor. Tr. 1151. Plaintiff alleges disability beginning on February 1, 2004 based on a combination of impairments, including degenerative disc disease of the lumbar and cervical spine, bilateral shoulder impingement, bilateral meniscal tears, left shoulder strain, diabetes, and arthritis. Pl.'s Opening Br. at pg. 2; Tr. 1191-95, 1206-07.

Mrs. Alyce Khal, plaintiff's wife, testified at the hearing and described plaintiff's alleged limitations. Tr. 1214-18. A vocational expert (VE) also testified at the hearing. Tr. 1218-27. When asked to consider a person limited to medium and light exertion work, the VE opined that employment as a chiropractor would be ruled out. Tr. 1219. However, the VE testified that there were sedentary jobs available in the regional and national economy that plaintiff could perform. Tr. 1219-21.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed

PAGE 4 - OPINION AND ORDER

disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can work, he is not disabled. If he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

### DISCUSSION

#### I. The ALJ's Findings

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 18, Finding 2. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease, chronic cervical strain, left cervical facet syndrome, rotator cuff tear of the left shoulder, small tear of the free margin of the right medial meniscus, small tear of the free margin of the left lateral meniscus, bilateral shoulder impingement, and chronic left acromioclavicular strain aggravating arthritis. Tr. 19, Finding 3.

At step three, the ALJ found that plaintiff's impairments, alone or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20, Finding 4. The ALJ further determined that plaintiff had the residual functional capacity (RFC) to

PAGE 5 - OPINION AND ORDER

perform sedentary work, but must avoid concentrated exposure to vibration and the use of ladders, ropes, or scaffolds. Tr. 20, Finding 5. Plaintiff can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and perform over-head reaching. Id.

At step four, the ALJ concluded that plaintiff was unable to perform his past relevant work as a chiropractor. Tr. 24, Finding 6. Lastly, at step five, the ALJ determined that plaintiff had acquired skills that were transferable to other jobs existing in significant numbers in the national economy. Tr. 25, Finding 10.

## II. Plaintiff's Allegations of Error

Plaintiff alleges that the ALJ erred by: 1) failing to provide clear and convincing reasons for rejecting his testimony; 2) improperly rejecting the lay witness's testimony; 3) improperly evaluating the opinion of plaintiff's treating physician; 4) finding that plaintiff possesses transferable work skills; and 5) failing to support the step five finding with substantial evidence.

### A. Plaintiff's Credibility

Plaintiff asserts that the ALJ erred by failing to provide clear and convincing reasons for rejecting his testimony regarding his inability to sit, stand, and walk. Pl.'s Opening Br. at pg. 13-15. Specifically, plaintiff argues that the ALJ failed to cite to any physical activities he participates in that contravene his stated limitations. Id. at 14. In addition, plaintiff contends that the ALJ erred by failing to develop the record regarding his travel history and medicinal compliance. Id.

When a claimant can show underlying impairments that could

PAGE 6 - OPINION AND ORDER

reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject [his] testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ's ultimate findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002).

Here, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that his statements regarding the extent of these symptoms were not credible. Tr. 21. The ALJ provided four reasons why plaintiff's testimony was not credible: 1) his inconsistent physical activities; 2) his inconsistent reporting of limitations; 3) his failure to follow the prescribed treatment plan; and 4) his lack of interest in vocational rehabilitation.

PAGE 7 - OPINION AND ORDER

The ALJ discounted plaintiff's testimony, in part, based on medical examination reports that indicated he was able to endure several domestic and international flights. Tr. 1043, 1044, 1047. Inconsistencies, including those between a plaintiff's testimony and activities of daily living, can serve as a basis for discrediting it. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). Plaintiff testified that he could sit for only 30 minutes without changing positions and must alternate positions throughout the day. Tr. 1195, 1210. Plaintiff also stated that, physically, he has "limited functional capacity." Tr. 1206.

"As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). Here, implicit in the ALJ's decision is the general notion that plaintiff's extensive traveling is inconsistent with his claimed inability to sit for longer than 30 minutes. Travel by plane, even domestically, can be long in duration and patrons are typically confined to their seats during the entire flight. A claimant with the alleged inability to sit for longer than 30 minutes risks not being able to move at all upon boarding an aircraft. Furthermore, plaintiff's repeated traveling suggests that he can tolerate activities that require sitting for extended periods of time. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly inferred that plaintiff was not as physically limited as purported to be based on his ability to travel to Venezuela). While

PAGE 8 - OPINION AND ORDER

this evidence is potentially susceptible to more than one rational interpretation, the Court finds that the ALJ's decision is nonetheless reasonable and must be upheld.

The ALJ also discounted plaintiff's testimony because he reported his alleged symptoms to Dr. Paul M. Puziss and Dr. Fayyaz Mahmood inconsistently. Tr. 22-24. A claimant's inconsistent or non-existent reporting of symptoms is competent evidence for an ALJ to consider when making a credibility assessment. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006); Waggener v. Astrue, 2012 WL 1309248, *5 (D. Or. Jan. 20), adopted, 2012 WL 1279943 (D. Or. Apr. 16, 2012). While being examined by Dr. Puziss, plaintiff complained of pain in his right wrist and described the pain as being worsened by throwing, pushing, lifting, driving, and typing. Tr. 989-99. The ALJ noted that plaintiff's "described activities . . . are not included in what he alleges he is able to do." Tr. 22. The mere fact that plaintiff was able to engage in those activities casts doubt on the severity of his alleged impairments.

The ALJ further noted that, while under the care of Dr. Mahmood, there were "virtually no comments or descriptions" of plaintiff's physical difficulties relating to his alleged limitations. Tr. 24. Dr. Mahmood is plaintiff's primary care provider and the earliest medical record is from December 2001. Tr. 23, 511. Because Dr. Mahmood is an integral part of plaintiff's on-going treatment, it is reasonable to infer that plaintiff would have at least mentioned the severity of his alleged physical impairments over the span of several years.

PAGE 9 - OPINION AND ORDER

Further, the ALJ discounted plaintiff's testimony because he was non-compliant with prescribed medical treatments, causing "unfortunate results." Tr. 24. An ALJ may consider a claimant's failure to follow a prescribed course of treatment when weighing a claimant's credibility. See Tommasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at 1284); see also SSR 96-7p, 1996 WL 374186, *7. The record demonstrates that plaintiff's medicinal compliance often fluctuated. The ALJ referred to several examination notes written by Dr. Mahmood indicating that plaintiff either "tapered off" his medicine or stopped taking a particular medicine altogether. Tr. 1041-42, 1045. Even if plaintiff believed he was qualified to alter his medicinal treatment, Dr. Mahmood explicitly advised him not to do so. Tr. 1041. Given the alleged symptoms and the relief pain medicine can provide, the failure to follow Dr. Mahmood's advice indicates that plaintiff's pain and limitations are not as severe as he alleges. See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).

Based on the above, the ALJ articulated several clear and convincing reasons for discounting plaintiff's testimony regarding the extent and severity of his limitations. As such, it is unnecessary for this Court to further discuss the other reasons provided. Even if it was legal error for the ALJ to use plaintiff's lack of vocational rehabilitation to discount his testimony, the error is harmless because the ALJ provided additional, valid reasons to support the ultimate credibility determination. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th

Cir. 2008).

Finally, plaintiff argues, in the alternative, that the ALJ had a duty to develop the record regarding his travel and medicinal compliance. Pl.'s Opening Br. at pg. 14. The ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288). Nonetheless, the ALJ's duty to more fully develop the record is triggered only when the evidence is ambiguous or the record inadequate. Id.

Here, the ALJ cited to numerous treatment records that describe the extent of plaintiff's travel and non-compliance with the advised treatment plan, and found that the record was neither ambiguous nor inadequate. Tr. 24. Furthermore, plaintiff does not identify any evidence in the record that was ambiguous or inadequate, but instead argues that because the ALJ identified inconsistencies in the record, the ALJ should have further inquired into those topics. This implication is contrary to the well-established principles outlined above.

Accordingly, I find the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's testimony. In addition, I find that the ALJ's duty to develop the record was not triggered in this case. Thus, the ALJ's decision is affirmed as to this issue.

PAGE 11 - OPINION AND ORDER

B. Lay-Witness's Credibility

Plaintiff next asserts that the ALJ improperly rejected the lay testimony of Mrs. Khal. Pl.'s Opening Br. at pg. 15. Lay testimony concerning the claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that must be taken into account. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ must give reasons germane to each witness in order to discount competent lay witness testimony. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). However, the ALJ is not required to discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. Id.

At the March 11, 2010 hearing, Mrs. Khal testified that plaintiff changes position often and "walks a little bit" before needing to lay down. Tr. 1216. She also stated that "it's hard for him to get up out of bed" and that he would lay down for "about three to four hours a day." Tr. 1216-18. In addition, Mrs. Khal completed a third-party function report on March 27, 2004, which is consistent with her hearing testimony. Tr. 275-83.

After considering Mrs. Khal's testimony, the ALJ stated that Mrs. Khal and plaintiff "describe[d] current alleged symptoms and deficits, when the alleged onset date is February 1, 2004, and the date last insured is December 31, 2008." Tr. 24. An ALJ may reject lay testimony that mirrors the complaints of a claimant found to be

PAGE 12 - OPINION AND ORDER

not credible, but must "tie the reasoning of their credibility determinations to the particular witnesses whose testimony they reject." Valentine v. Barnhart, 574 F3d 685, 694 (9th Cir 2009). The record indicates that Mrs. Khal's hearing testimony did not accurately describe the nature of plaintiff's physical condition during the relevant period; thus, the ALJ's reasoning in this regard was proper. See Tr. 276-80, 1216-18. The ALJ, however, did not cite or discuss the third-party function report Mrs. Khal completed in March 2004. Her report was completed within the relevant period and confirmed many of the symptoms she and plaintiff alleged at the second hearing, including his limited ability to walk, sit, or raise his arms. Tr. 276-280. Because the ALJ did not consider Mrs. Khal's third-party report or explain why it was disregarded, his conclusion is not supported by substantial evidence. Thus, the ALJ erred.

An ALJ's error, however, is harmless where it is "inconsequential to the ultimate nondisability determination." Molina, 674 F.3d at 1115 (citations omitted). Here, as in Molina, Mrs. Khal's testimony and third-party report describe symptoms and physical limitations similar to those alleged by the plaintiff. Compare Tr. 276-81, 1214-18, with Tr. 1188-95, 1206-14. While the ALJ did not provide adequate reasons for rejecting Mrs. Khal's testimony, the ALJ cited to other contradictory testimony in his decision that supports the rejection of Mrs. Khal's testimony. For instance, plaintiff's inconsistent physical activities discussed above would provide an adequate basis for rejecting Mrs. Khal's

PAGE 13 - OPINION AND ORDER

testimony regarding plaintiff's limited ability to walk or sit without changing positions. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

It is reasonable to infer that the ALJ discounted Mrs. Khal's testimony for the same reasons that he discounted plaintiff's. As the ALJ properly discredited the plaintiff's testimony regarding his physical limitations, I find that the ALJ's failure to explicitly provide reasons for discrediting Mrs. Khal's 2004 testimony is harmless. See Molina, 674 F.3d at 1117 ("[T]he ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well" to lay testimony). Therefore, the ALJ's decision is affirmed in this regard.

C. Evaluation of the Medical Evidence

Plaintiff also asserts that the ALJ erred by failing to provide clear and convincing reasons for discrediting the opinion of his treating physician, Dr. Puziss. Pl.'s Opening Br. at pg. 11-13.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the medical opinion of a claimant's treating physician is given greater weight "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." Smolen, 80 F.3d at 1285; see also 20 C.F.R. § 404.1527(c)(2). A treating physician's opinion is controlling when it is "well supported by medically acceptable

PAGE 14 - OPINION AND ORDER

clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). "An ALJ may reject the uncontradicted medical opinion of a treating physician only for clear and convincing reasons supported by substantial evidence in the record." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (internal quotations omitted). If contradicted, the ALJ may reject a medical opinion only if "[he] provides specific and legitimate reasons supported by substantial evidence in the record." Id. (internal quotations omitted).

Plaintiff argues that the ALJ's rejection of Dr. Puziss's opinion was improper because: 1) the opinion of Dr. Steven J. Schilperoort does not conflict with Dr. Puziss's; 2) Dr. Puziss provided objective explanations for the limitations he assessed on the March 1, 2010 questionnaire; and 3) the alleged symptoms Dr. Puziss documented in a July 2009 treatment report were later attributed to a "trigger finger" impairment.[1]

The record reflects that Dr. Puziss has maintained a professional relationship with plaintiff since December 1995. Tr. 3, 476. On December 1, 2004 and March 24, 2005, Dr. Puziss conducted a thorough physical examination to test the range of

---

[1] The only medical notation of a "trigger finger" is found in the March 2010 questionnaire completed by Dr. Puziss; this date is well beyond plaintiff's last date insured. Tr. 1065. As there is no mention of this impairment prior to the date last insured, the Court cannot discern whether plaintiff's alleged right wrist pain can now be attributed to a trigger finger. Tr. 989-90. Nevertheless, the existence of this specific diagnosis is immaterial to this Court's review.

motion in plaintiff's spine, shoulder, neck, and lumbar regions.
Tr. 458-72. On December 17, 2004, Dr. Puziss examined plaintiff's
MRI results and diagnosed him with:

1) degenerative spondylosis, mainly L4-5 with mild
   foraminal stenosis bilaterally L4-5 and a small
   disc protrusion, probably not symptomatic L5-S1,
   small annular tear L4-5.
2) Small tear free margin right medical meniscus
3) Small tear free margin left lateral meniscus
4) Bilateral small full thickness supraspinatus
   rotator cuff tears.

Tr. 473. On March 1, 2010, Dr. Puziss completed a medical opinion
questionnaire indicating plaintiff's ability to do work-related
activities. Tr. 1063-66. Dr. Puziss noted that plaintiff could
occasionally and frequently lift less than 10 pounds, only stand
and walk for less than 2 hours in an 8 hour day, and only sit for
3 hours in 8 hour day. Tr. 1063. He noted that plaintiff can only
sit for 30 minutes before changing positions, stand for 10 minutes
before changing positions, and must walk around every 30 minutes
for a duration of 10 minutes. Tr. 1064. He also noted that
plaintiff must be able shift to positions at will and lie down at
unpredictable intervals throughout the work day. Id.

Dr. Puziss rated plaintiff as never being able to twist,
stoop, or crouch, but could occasionally climb stairs and ladders.
Tr. 1065. In addition, he noted to plaintiff's limited ability to
push, pull, finger, or reach. Id. Lastly, Dr. Puziss indicated that
plaintiff's impairments would cause him to be absent from work more
than three times per month. Tr. 1066. Dr. Puziss opined that
plaintiff's impairments cause him to be "permanently and totally
disabled" from returning to his past work as a chiropractor. Tr.

PAGE 16 - OPINION AND ORDER

456. He also opined that plaintiff "is probably incapable of any kind of work given his age, education, and skills." Id.

The ALJ discounted Dr. Puziss's opinion, in part, because of contradictory opinions proffered by Dr. Schilperoort and Dr. Gerald R. Reimer. Tr. 23. The ALJ noted that on March 22, 2005, both physicians examined plaintiff's MRI results and concluded that they were "unable to identify an [L4-5] annular tear based on the accepted diagnostic criteria from MRI scan only." Tr. 23, 868. The ALJ also disregarded Dr. Puziss's opinion because he did not provide "objective explanations for the severe limitations" assessed in the March 1, 2010 questionnaire and exceeded his area of expertise by commenting on plaintiff's inability to perform any kind of gainful work activity. Tr. 23.

As an initial matter, the fact that Dr. Puziss's opinion is controverted by another doctor is not a legally sufficient reason to reject it; rather, such contradiction merely requires the ALJ to proffer specific and legitimate, as opposed to clear and convincing, reasons for discounting Dr. Puziss's opinion. See Orn, 495 F.3d at 632. Here, this alleged contradiction only pertains to one of plaintiff's diagnoses. Further, the record indicates that this issue remains unresolved as both Dr. Puziss and Dr. Schilperoort suggested that further evaluation is needed to determine whether the tear is indeed present. Compare Tr. 867, with Tr. 457. Thus, it is questionable whether this disparity in the opinion evidence, which suggest a difference as to diagnosis rather than functional limitations, is even relevant. Nonetheless, because, as discussed below, the ALJ failed to even provide specific and legitimate reasons for rejecting Dr. Puziss's opinion,

this issue is moot.

Moving to the ALJ's evaluation of the medical evidence, the ALJ discounted Dr. Puziss's opinion because he failed to provide an objective explanation for the physical limitations he assessed in the March 2010 questionnaire. Tr. 23. Here, the record demonstrates that Dr. Puziss has conducted multiple physical examinations, noting plaintiff's range of mobility in his spine, neck, shoulder, and lumbar regions. Tr. 455-78. The ratings Dr. Puziss provided in the questionnaire clearly flow from the results of the previous physical exams. Further, the questionnaire specifically asked Dr. Puziss to indicate which medical findings support the limitations he described. He noted plaintiff's annular tear, degenerative spondylitis, torn lateral menisci, and shoulder impingement, all of which are supported by diagnostic imaging. Tr. 1064. Based on the prior physical exams and MRI results, Dr. Puziss was in the best position to assess the severity of plaintiff's physical limitations and mobility. Thus, I find the ALJ's stated reason to be insufficient in light of Dr. Puziss's detailed medical records, his expertise, and his familiarity with plaintiff's medical history.

The ALJ further discounted Dr. Puziss's opinion on the grounds that he exceeded his area of expertise by commenting on plaintiff's inability to perform any kind of gainful work activity; this is also legally insufficient. Tr. 23. It is well-established that disability opinions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). Physicians may provide opinions on the ultimate issue of a claimant's disability, but the ALJ must provide legally sufficient reasons for rejecting that opinion. See Holohan, 246

F.3d at 1202-03; Lester, 81 F.3d at 834.

In focusing unduly on Dr. Puziss's area of expertise, the ALJ failed to provide a legally sufficient reason reject Dr. Puziss's disability opinion. Here, Dr. Puziss made one written statement that exceeded his area of expertise; the fact that Dr. Puziss's opinion concerned plaintiff's ability to work, rather than the nature of his physical limitations, does not relieve the ALJ of the burden of offering specific and legitimate reasons for rejecting it. Moreover, this is an inadequate basis to reject the other impairments that Dr. Puziss assessed. Accordingly, I find that the ALJ's reasons for discrediting Dr. Puziss's opinion are neither legally sufficient nor supported by substantial evidence in the record.

As a result of the ALJ's improper evaluation of Dr. Puziss's opinion, several of plaintiff's functional limitations were not included in the ALJ's RFC assessment. Therefore, because the ALJ committed error, the Court must determine whether remand for further proceedings or for the immediate payment of benefits is appropriate in this case.

III. Remand

The Court may, in its discretion, order an immediate payment of benefits. Harman v. Apfel, 211 F.3d 1172, 1177-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. The Ninth Circuit has set forth a three-part test for determining whether to remand a case for further proceedings or for the immediate award of benefits. The immediate payment of benefits is appropriate where: (1) the ALJ failed to provide legally sufficient

PAGE 19 - OPINION AND ORDER

reasons for rejecting the claimant's testimony; (2) no outstanding issues remain for the ALJ to resolve; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such testimony credited. Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004).

As discussed above, the ALJ provided legally sufficient reasons for discrediting plaintiff's testimony; further, the ALJ's improper rejection of Mrs. Khal's testimony was harmless. However, the ALJ failed to provide legally sufficient reasons for discrediting the opinion of Dr. Puziss. Where, as here, the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, the Court has discretion to credit that opinion "as a matter of law." See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

Because the ALJ improperly discredited Dr. Puziss's opinion, it is unclear whether the ALJ's subsequent RFC assessment and hypothetical questions to the VE were based upon substantial evidence. See Harman, 211 F.3d at 1180. For instance, several of the physical limitations Dr. Puziss assessed were not incorporated in plaintiff's RFC assessment. As a result, the Court is unable to determine whether steps four and five of the disability analysis are based on substantial evidence. Id.

Accordingly, this case is remanded for further proceedings in order to reevaluate Dr. Puziss's opinion; the ALJ should also reconsider whether that evidence requires a new RFC assessment and, if necessary, reevaluate steps four and five of the sequential process.

PAGE 20 - OPINION AND ORDER

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this ____ day of ~~February~~ 2013.

_____
Ann Aiken
United States District Judge

PAGE 21 - OPINION AND ORDER